Lloyd E. YARBROUGH et al *v.*
ARKANSAS STATE HIGHWAY COMMISSION et al

76-29                                    539 S.W. 2d 419

Opinion delivered July 6, 1976
[Rehearing denied September 13, 1976.]

*Williams & Gardner,* for appellants.

*Thomas B. Keys* and *Chris Parker,* for appellees.

ELSIJANE T. ROY, Justice. The Highway Beautification Act of 1965 (23 U.S.C. § 131 et seq.)[1] requires states to provide "effective control" of outdoor advertising devices along certain highways or suffer a reduction of 10% in the amount of federal-aid Highway funds otherwise available. Billboards along federal-aid highways can only be erected, after the passage of state-conforming legislation, in accordance with an agreement established between the state and the Secretary of Transportation.

To conform to this federal requirement, the Arkansas

---

[1]When the bill was initially presented to Congress, President Lyndon B. Johnson stated:

> In a nation of continental size, transportation is essential to the growth and prosperity of the national economy.

> But that economy, and the roads that serve it, are not ends in themselves. They are meant to serve the real needs of the people of this country. And those needs include the opportunity to touch nature and see beauty, as well as rising income and swifter travel. (71 Mich. L. Rev. 1296).

legislature enacted statutes[2] authorizing the Arkansas State Highway Commission (hereafter Commission) to enter into a regulatory agreement with the Secretary of Transportation, and authorizing the Commission to establish a permit and enforcement mechanism for carrying out the provisions of the statutes. The Commission thereafter adopted a draft agreement and a series of regulations which were approved by the Secretary of Transportation January 29, 1972.

Appellants challenge the above statutes and regulations, appealing from the trial court's determination that they are valid. Appellant Lloyd Yarbrough owns and operates a large cold storage and open market facility located on Interstate 40 just south of Clarksville, Arkansas. He is engaged in the business of buying, selling and growing fruit, vegetables and other produce. Yarbrough, pursuant to lease agreements, has placed advertising devices on lands owned by appellants Johnny Wilhelmsen and Ozark Real Estate Company.

It is uncontradicted that the signs in question were erected after the effective dates of both the federal and the state enactments; that no permits were sought as required; and that the signs are in violation of the statutory requirements. However, appellants contend the statutes are unconstitutional and seek a declaratory judgment to this effect.

Appellant Yarbrough first urges the Commission should be enjoined from ordering the signs removed because of lack of notice to him. The record reflects the required legal notice of 30 days was given by the Commission to appellant-landowners and also that appellant Yarbrough had actual notice. Furthermore, removal of the signs was deferred pending determination of the case on the merits, so we find this contention without substance.

Appellants urge there is an unlawful delegation of legislative power to the Commission in authorizing it to promulgate the regulations. We do not find this to be true. The legislature declared the purpose of the statutes, and the scope of authority delegated to the Commission is well defin-

[2]Act 640 of 1967, amended by Act 999 of 1975 (Ark. Stat. Ann. §§ 76-2501 et seq. (Supp. 1975) ).

ed. Pursuant thereto authorized regulations have been promulgated by the Commission. We find the administrative standards prescribed by the legislature have been carried out by the regulations which are valid, adequate and reasonable.

Appellants specifically contend that the legislation is violative of Article 2, § 22 of the Arkansas Constitution and that they have been denied due process and equal protection of law.

This Court recognizes Article 2, § 22 protects individual property rights, but the individual's use and enjoyment of property is always subject to reasonable regulations in order to preserve the welfare of the public at large.

In the case of *Board of Adjustment of Fayetteville* v. *Osage Oil & Transportation, Inc.,* 258 Ark. 91, 522 S.W. 2d 836 (1975), issues similar to appellees' contentions were raised, and we held *inter alia* that:

> The basic power of a municipality to regulate the size and location of billboards and other commercial signs has been sustained in so many jurisdictions that it would be a waste of time and effort to cite the cases. Such regulations have been upheld upon many grounds, including the promotion of traffic safety, the control of potentially hazardous structures, and the fundamental considerations of city planning and city beautification that underlie the zoning concept itself. * * *

In the case of *Markham Advertising Company, Inc., et al.* v. *The State of Washington, et al.,* 73 Wash. 2d 405, 439 P. 2d 248 (1968), reh. denied 393 U.S. 1112, 89 S. Ct. 854, 21 L. Ed. 2d 813 (1969), the court held a statute regulating outdoor advertising was not an unconstitutional exercise of police power as it promoted the convenience and enjoyment of public travel, protected public investment in the highways, attracted visitors to the state and conserved the natural beauty of areas adjacent to the highways.

In *General Outdoor Advertising Co.* v. *Dept. of Public Works,* 289 Mass. 149, 193 N.E. 799 (1935), the court held that the regulation of outdoor advertising along the highway was a

valid exercise of the police power, stating *inter alia:*

> It is, . . . , within the reasonable scope of the police power to preserve from destruction the scenic beauties bestowed on the Commonwealth by nature in conjunction with the promotion of safety of travel on the public ways and the protection of travellers from the intrusion of unwelcome advertising.

To the same effect see *Ghaster Properties, Inc.* v. *Preston,* 176 Ohio St. 425, 200 N.E. 2d 328 (1964), and *New York State Thruway Authority* v. *Ashley Motor Court, Inc.,* 10 N.Y. 2d 151, 218 N.Y.S. 2d 640, 176 N.E. 2d 566 (1961).

In *Village of Belle Terre* v. *Boraas,* 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1973), the United States Supreme Court, quoting from *Berman* v. *Parker,* 348 U.S. 26, 75 S. Ct. 98, 99 L. Ed. 27 (1954), held that:

> * * * The concept of the public welfare is broad and inclusive . . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful, as well as healthy, spacious as well as clean, well balanced as well as carefully patroled.

At least 49 of the 50 states have enacted legislation in compliance with the Highway Beautification Act. See 71 Mich. L. Rev. 1296, 1328.[3]

Appellants charge that Ark. Stat. Ann. §§ 76-2501 et seq. (Supp. 1975) abridge the equal protection clause by providing compensation for the owners of outdoor advertising devices, or property leased for outdoor advertising purposes, existing prior to the effective date of the statute, without

---

[3]The one exception, South Dakota, brought suit to compel the Secretary of Transportation to pay $3,361,546.60 of federal-aid highway funds, withheld for noncompliance for the fiscal year 1973, to which the state otherwise would have been entitled. The court entered a summary judgment upholding the Secretary's determination and refusing to order payment of the money to South Dakota. *South Dakota* v. *Volpe,* 353 F. Supp. 335 D.C. (1973).

providing compensation for individuals who erect such devices after that date. We find this contention without merit since the legislation became effective January 29, 1972, with the signing of the federal/state agreement and according to appellant Yarbrough's own testimony he erected his signs in June, 1975.

The equal protection clause does not prohibit all statutory classification. In *Reed* v. *Reed,* 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971), the Court stated:

> * * * A classification "must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

The equal protection clause prohibits invidious discrimination and does not require identity of treatment. *Clark* v. *Dwyer,* 56 Wash. 2d 425, 353 P. 2d 941 (1960); *Williamson* v. *Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 75 S. Ct. 461, 99 L. Ed. 563 (1955); and *Walters* v. *City of St. Louis,* 347 U.S. 231, 74 S. Ct. 505, 98 L. Ed. 660 (1954).

In view of the very real difference in the legal interest of the owners of prior nonconforming uses and later illegally initiated uses, the classification herein is reasonable and valid and appellants have no standing to complain.

Appellants also argue that the Commission's regulations deny them equal protection of law because they discriminate against agricultural pursuits. The statutory scheme contemplated an exemption for those areas which were already heavily commercialized or industrialized and sought to prevent areas devoted mainly to agricultural activities or forestry land from becoming glutted by signs which would obstruct the view and detract from the beauty of the landscape. Few aesthetic features will be found in zoned or unzoned commercial or industrial areas, while rural and residential areas are more likely to include places of scenic beauty and historic interest. This classification to preserve pastoral scenery and eliminate disharmonious advertising has a substantial, fair and reasonable relation to the object of the legislation. *Reed* v.

*Reed, supra.*

In recognizing the validity of different classifications in the *Osage Oil* case, *supra,* this Court said:

> \* \* \* The on-site business signs and the off-site outdoor billboard fall into different categories, are erected for different purposes, and are subject to different regulations. \* \* \*

> The outdoor advertising sign, on the other hand, is not maintainable as a matter of right; such signs have been prohibited altogether. See the extended discussion in *General Outdoor Adv. Co.* v. *Department of Public Works,* 289 Mass. 149, 193 N.E. 799 (1935). \* \* \* ~

Appellant's final contention is that irreparable injury will be suffered by the peach and apple growers of Johnson County if they are denied the right to advertise and the general public will be damaged by not knowing where purchases of this sort may be made. Appellant Yarbrough testified as to the volume and value of sales for overripe peaches and the need for the "illegal" signs to advertise his produce in order to make quick sales, but he failed to give any comparison figures or to make any reasonable projection of losses causing irreparable injury. We find that he has not been denied the right to advertise, but the right has been limited by valid restrictions. Testimony at the trial indicated the possibility of "on premise" signs and use of space available near appropriate exits, but these admittedly had not been explored by appellant Yarbrough at the time of the trial. Furthermore, appellants had no vested right to capitalize on the flow of traffic over Interstate 40. In view of lack of proof on this issue of damages and our determination that the legislation herein is constitutional, appellants must also fail on this contention.

For the foregoing reasons the decree is affirmed.