304 So.2d 637 (1974)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
ROBERTS ENTERPRISES, INC., et al.
No. 48366.
Supreme Court of Mississippi.
December 9, 1974.
*638 A.F. Summer, Atty. Gen., by Oscar Mackey, Asst. Atty. Gen., Heber Ladner, Jr., Jackson, for appellant.
Guy, Dowdy & Smith, McComb, for appellees.
GILLESPIE, Chief Justice:
The Mississippi State Highway Commission appeals from a decree entered in the Chancery Court of Pike County declaring the Outdoor Advertising Act, Mississippi Code Annotated sections 49-23-1 through 49-23-29 (1972), to be unconstitutional. We reverse.
The following are the facts of this case. Roberts Enterprises, Inc., was the owner of two billboards which were leased to West Quality Food Service, Inc. The billboards were erected after June 16, 1966 (the effective date of the act), and each was situated within 660 feet of the right-of-way of a highway in violation of section 49-23-5.[1] Notice was sent to West Quality Food Service, Inc., and the landowners advising that the billboards were in violation of the statute and requesting that they be removed. After the owners refused to act, the Commission filed a bill of complaint seeking a decree authorizing the Commission to remove the billboards and enjoining the defendants from further violations of the act. Pursuant to section 49-23-17,[2] no compensation was offered defendants for loss of the signs.
*639 The chancellor entered a decree denying the Commission the relief sought and holding that the act violated section 17 of the Mississippi Constitution of 1890 and the Fourteenth Amendment of the United States Constitution.
The first issue is whether the act violates section 17 of the Mississippi Constitution, which requires that landowners be compensated for property "taken or damaged for public use."
We hold that the act is not concerned with a physical taking or damaging of property. Rather, it involves a use restriction, and is in essence a zoning of property adjacent to highways. Restrictions imposed upon the use of property through the lawful exercise of the police power of the state do not require compensation. The distinction between a use restriction and a taking of property was discussed in Jackson Municipal Airport Authority v. Evans, 191 So.2d 126 (Miss. 1966), wherein we said: "... where the owner of property is merely restricted in the use and enjoyment of his property, he is not entitled to compensation." 191 So.2d at 133. The question arises whether the state, through the exercise of police powers, may regulate billboards adjacent to its highways.
Section 49-23-1 declares that billboards "... should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty."
Similar legislation has been upheld in other states. The Supreme Court of New Hampshire in Opinion of the Justices, 103 N.H. 268, 169 A.2d 762 (1961), sustained billboard regulations on the grounds of highway safety. New York State Thruway Authority v. Ashley Motor Court, Inc., 10 N.Y.2d 151, 218 N.Y.S.2d 640, 176 N.E.2d 566 (1961), is in accord. Other courts have upheld legislation on the grounds of both safety and aesthetic considerations. General Outdoor Advertising Co. v. Department of Public Works, 289 Mass. 149, 193 N.E. 799 (1935); Ghaster Properties, Inc. v. Preston, 176 Ohio St. 425, 200 N.E.2d 328 (1964); Markham Advertising Co. v. State, 73 Wash.2d 405, 439 P.2d 248 (1968).
Some decisions upholding ordinances regulating billboards have taken the position that persons who erect billboards are really using the highway and not the land upon which they are situated, because billboards which cannot be seen from a public thoroughfare have no economic value. Churchill & Tait v. Rafferty, 32 P.I. 580 (1915).
We are of the opinion that preservation of natural beauty was the major factor behind the passage of this legislation.
The Court of Appeals of Kentucky upheld similar legislation in Moore v. Ward, 377 S.W.2d 881 (Ky. 1964), stating, "Aesthetic considerations are of sufficient potency for the legislature to find a public necessity for this type of legislation." 377 S.W.2d at 886.
In Jasper v. Commonwealth, 375 S.W.2d 709 (Ky. 1964), the Court of Appeals of Kentucky also upheld the constitutionality of the Junk Yard Act. The Court said:
... the principal objective is based upon aesthetic considerations. Though it has been held that such considerations are not sufficient to warrant the invocation of the police power, in our opinion the public welfare is not so limited... . The police power is as broad and comprehensive as the demands of society make necessary. 375 S.W.2d at 711.
The United States Supreme Court in Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), sustained the constitutionality *640 of the District of Columbia Redevelopment Act of 1945. In discussing police power, a unanimous court said:
The concept of the public welfare is broad and inclusive ... The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capitol should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way. 348 U.S. at 33, 75 S.Ct. at 102-103.
We concur with the reasoning of the courts in these cases.
There is an additional factor to be considered. We take judicial notice of the fact that the state has many historic sites and recreational areas which attract thousands of visitors annually. The preservation of natural beauty along our highways makes travel more enjoyable for tourists as well as Mississippians. Obviously, anything which promotes the tourist business affects the general welfare of the state. In our opinion, the preservation of natural beauty will support the exercise of the police power of the state. We hold that the Mississippi Outdoor Advertising Act does not violate section 17 of our Constitution.
In City of Jackson v. McPherson, 162 Miss. 164, 138 So. 604 (1931), the Court upheld as constitutionally valid a 1929 zoning ordinance adopted pursuant to Chapter 308, Laws of 1926. In that case the Court was conscious of, and gave due consideration to, the fact that fundamental changes justified and required that constitutional guaranties must be allowed to expand in their application and keep pace with new conditions and new problems. By analogy the reasoning of the McPherson case applies to the present problem.
Section 49-23-19 provides that billboards erected contrary to the Act are "declared to be a public nuisance." It is argued that the determination of what constitutes a nuisance is a judicial and not a legislative function and that the Commission failed to present any evidence to indicate that the billboards were harmful. It is not necessary for us to address this issue. Since the state may regulate billboards through its police power, it is not essential that nonconforming signs be declared a nuisance prior to their removal.
The next issue presented is whether the Act violates the Fourteenth Amendment.
In his opinion, the chancellor, noting that section 49-23-17 referred to "the right to erect and maintain such signs," held that the awarding of compensation only to landowners who had signs situated on their property prior to the effective date and not to those who had signs erected after the effective date was contrary to the Equal Protection Clause of the Fourteenth Amendment.
Section 49-23-17 is captioned "compensation for removal of advertising." This section provides "[j]ust compensation shall be paid for the removal of any outdoor advertising... ." The section further states that damages are to be awarded the sign owner for his interest in the sign and also to the landowner for his loss "of the right to erect and maintain such signs."
The Georgia Supreme Court, in State Highway Department v. Branch, 222 Ga. *641 770, 152 S.E.2d 372 (1966), held the Georgia Outdoor Advertising Act of 1964 to be unconstitutional because it provided no compensation for the loss of signs. It was replaced by the Outdoor Advertising Control Act of 1971, which provided compensation for signs erected prior to its passage and not for signs constructed later. In National Advertising Co. v. State Highway Department, 230 Ga. 119, 195 S.E.2d 895 (1973), the Court upheld the new act. The argument that it violated the Fourteenth Amendment was dismissed as being without merit. The opinion states:
The police power of the state to zone property to prevent its use for certain purposes in the future, as distinguished from the taking or damaging in respect to a use already in existence, is not open to question, and does not require the payment of any compensation. 195 S.E.2d at 897.
We said in State v. Land, 231 Miss. 529, 95 So.2d 764 (1957), "a state may classify persons for the purpose of legislation and pass laws applicable only to persons or objects within a designated class, provided such classification is reasonable and not clearly arbitrary." 231 Miss. at 562, 95 So.2d at 778. It was neither unreasonable nor arbitrary for the legislature to distinguish between landowners who lawfully had billboards situated on their property on the effective date of the act and landowners who erected signs after the effective date in defiance of the act.
We agree with the decision of the Georgia Supreme Court in National Advertising Co. v. State Highway Department, supra. Accordingly, we hold that section 49-23-17 does not violate the Fourteenth Amendment.
The decree of the trial court is reversed and remanded for the entry of a decree enforcing the provisions of the act.
Reversed, rendered and remanded.
INZER, ROBERTSON, WALKER and BROOM, JJ., concur.
NOTES
[1] Section 49-23-5 provides: "No outdoor advertising shall be erected or maintained within six hundred sixty (660) feet of the nearest edge of the right-of-way and visible from the main-traveled way of the interstate or primary highways in this state, except the following: ... ." This section provides six exceptions, none of which is applicable to this case.
[2] Section 49-23-17 provides that compensation shall be paid to signowners and landowners for the removal of signs erected prior to the passage of the act. No compensation is provided for signs erected after the effective date.